Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| FÉLIX X. RODRÍGUEZ APONTE<br><br>Demandante - Recurrido<br><br>v.<br><br>VERDE REAL DEVELOPMENT, LLC, ISRAEL QUINTANA LUCIANO, ET ALS<br><br>Demandados-Peticionarios | KLCE202500386<br><br>consolidado con<br><br>KLCE202500442 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Carolina<br><br>Civil núm.: CA2024CV00439<br><br>Sobre: Incumplimiento de Contrato, Daños y Perjuicios |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de mayo de 2025.

El Tribunal de Primera Instancia ("TPI") denegó desestimar, por las alegaciones, una demanda presentada por un corredor de bienes raíces contra un desarrollador y varias personas asociadas con la construcción de una urbanización. Según explicamos en detalle a continuación, concluimos que erró el TPI, pues (i) la demanda no contiene una causa de acción viable contra el desarrollador por la venta del proyecto en el 2023, pues el contrato pertinente, aun de presumirse existente y válido en algún momento, fue terminado por el desarrollador en el 2020, y (ii) no se alega que las demás partes, con quienes el demandante no tenía contrato, hubiesen incurrido en alguna acción u omisión pertinente durante el año anterior a la presentación de la demanda.

I.

En febrero de 2024, el Sr. Félix Rodríguez Aponte (el "Realtor" o "Demandante") presentó la acción de referencia, sobre incumplimiento de contrato y daños y perjuicios, en contra de Verde Real Development LLC (el "Desarrollador" o "Dueño") y contra las

siguientes personas: el Sr. Israel Quintana Luciano, la Sa. Hilda L. Pérez Luciano y la Sociedad Legal de Gananciales compuesta por ambos; el Sr. Enrique Santiago Rodríguez, el Sr. Roberto López, el Sr. Manuel E. Net Velázquez, la Sa. Migdalia Ferrer Montijo y la Sociedad Legal de Gananciales compuesta por estos; Cidra Excavations LLC; y el Sr. José R. Iglesias Díaz, la Sa. Lizbeth Del Carmen Rodríguez y la Sociedad legal de Gananciales por ambos compuesta (los demandados, con excepción del Desarrollador, los "Asociados").

En cuanto al Desarrollador, el Realtor alegó que incumplió un contrato de corretaje de bienes raíces (el "Contrato") suscrito el 21 de mayo de 2015, mediante el cual se le autorizó a promocionar, negociar y vender las 112 unidades de un proyecto residencial denominado Verde Real, ubicado en el Municipio de Ciales (el "Proyecto"). Lo anterior, a cambio de una comisión de 2.5% del precio de venta (entre $105,000.00-$109,000.00) de cada unidad de vivienda cuya venta gestionara el Realtor.

El Realtor admitió que, en febrero de 2020, el Dueño le notificó que el Contrato había sido cancelado. El Realtor indica que, aunque el Dueño aseveró que ello había ocurrido desde octubre de 2017, nunca recibió en el 2017 comunicación alguna al respecto.

El Realtor alegó que, luego de la cancelación del Contrato, el Dueño había vendido el remanente del Proyecto al gobierno estatal por la suma de $6,100,000.00. Reclamó que era acreedor a una comisión por dicha venta.

En cuanto a los Asociados, el Realtor adujo que se trataba de personas de algún modo ligadas con el desarrollo del Proyecto (ejecutivos del Dueño, contratistas, ingenieros, etc.). Alegó que, "durante el periodo del 21 de mayo de 2015 hasta finales de 2020", los Asociados habían realizado "intervenciones indebidas, negligentes, omisiones y otros actos afectando sustancialmente

[sus] derechos" bajo el Contrato así como el "cumplimiento de sus obligaciones" bajo el mismo. Además, alegó que los Asociados habían intervenido "negligentemente en los procesos de administración y de la oficina de ventas" del Proyecto, y que estos también habían contribuido a que el Dueño cancelara el Contrato en el 2020. Además, alegó que algunos de los Asociados fueron negligentes en el diseño y construcción de las casas del Proyecto, "afectando así las ventas y financiamiento" de las unidades.

Luego de varios trámites procesales, el 27 de junio, el Dueño instó una *Moción De Desestimación Bajo La Regla 10.2(5) De Procedimiento Civil* (la "Moción del Dueño"). Arguyó que el Contrato era nulo debido a que carecía de una fecha de vencimiento. Explicó que la Ley 10-1994, según enmendada (la "Ley 10"), que reglamenta el corretaje de bienes raíces en Puerto Rico, exige que todos los contratos de corretaje, exclusivos, semiexclusivos o abiertos, contengan una fecha específica de vencimiento (día, mes y año) y prohíbe las cláusulas de renovación automática. Art. 31 de la Ley 10, 20 LPRA sec. 3054. Añadió que este requisito es esencial y su omisión ocasiona la nulidad del contrato. Así pues, el Dueño planteó que, aun si se tomaran como ciertos todos los hechos bien alegados en la Demanda, era nulo el Contrato por carecer de fecha de vencimiento. Además, el Dueño expuso que al Realtor se le pagó la comisión acordada por las ventas que realizó antes de la cancelación del Contrato y que el Realtor no había participado en la venta por cuya comisión reclama ni tampoco había gestionado venta alguna durante el periodo de tres (3) años en los que el Proyecto estuvo paralizado.

Por su parte, el 27 de junio, los Asociados también solicitaron la desestimación de la Demanda (*Moción De Desestimación Por Prescripción Extintiva*, o la "Moción de los Asociados"). Arguyeron que cualquier reclamación del Realtor en su contra sería por daños

y perjuicios extracontractuales, cuyo término prescriptivo es de un año. Plantearon que, a lo sumo, dicho término habría comenzado el 14 de febrero de 2020, cuando el Realtor admite que recibió una carta en donde se le indicaba que el Contrato estaba cancelado desde el 29 de octubre de 2017.

El Demandante se opuso a ambas mociones. Indicó las razones por las cuales, a su juicio, no procedía que el Contrato tuviese una fecha determinada de terminación. Planteó que debía interpretarse que, para cada unidad, la fecha de terminación del Contrato sería la fecha en que se autorizara la correspondiente escritura de compraventa. El Realtor anejó a su escrito varios documentos, entre los cuales consta un informe preparado por otro corredor de bienes raíces, en el cual se concluyó que el Contrato sí cumplió con cada uno de las disposiciones de la Ley 10, *ante*. Por consiguiente, afirmó que el Contrato no era nulo y que no procedía la desestimación de la Demanda en cuanto al Dueño.

Por otro lado, al oponerse a la Moción de los Asociados, el Realtor arguyó que no fue hasta septiembre de 2023 que supo sobre la venta del remanente del Proyecto. Planteó que, a partir del 29 de septiembre de 2023, cuando el Dueño y la Administración de Vivienda Pública suscribieron la escritura de compraventa, es que pudo precisar los actos de los Asociados en un "contexto más claro y preciso", como un patrón para obstaculizar el cumplimiento del Contrato. Al presentarse la Demanda en febrero de 2024, el Realtor sostuvo que su reclamación contra los Asociados no estaba prescrita.

El 26 de marzo, mediante dos *Resoluciones* (las "Decisiones"), el TPI denegó las mociones de desestimación. Razonó que el Contrato era válido porque tenía un término de duración, pues en su primera cláusula se acordó que estaría vigente hasta "la venta total de dicha propiedad, a partir de la firma del contrato". En

cuanto a los Asociados, el TPI razonó que el término prescriptivo de un (1) año comenzó a decursar a partir del 23 de septiembre de 2023, cuando el Realtor tuvo conocimiento de la venta del remanente del Proyecto.

El 11 de abril, el Dueño presentó uno de los recursos que nos ocupa (KLCE202500386); formula el siguiente señalamiento de error:

> Erró el TPI al dictar una Resolución contraria al estado de derecho vigente toda vez que el contrato de corretaje objeto del litigio no tiene fecha de vencimiento, conforme exige la Ley Núm. 10-1994 y su jurisprudencia interpretativa.

Por su parte, el 24 de abril, los Asociados interpusieron el otro recurso de referencia (KLCE202500442); formulan el siguiente señalamiento de error:

> Erró el Honorable Tribunal de Primera Instancia al determinar que la fecha en que el agraviado tuvo conocimiento del alegado daño fue en septiembre 29 del 2023 y no la fecha en que le fue cancelado su contrato el 25 de octubre de 2017 o, en la alternativa, el día 14 de febrero de 2020 fecha en que se le reitera al demandante que su contrato había sido cancelado.

Por tratarse de la revisión de dos dictámenes interlocutorios en un mismo caso, el 28 de abril ordenamos la consolidación de los recursos. Además, le ordenamos al Realtor que mostrara causa por la cual no debíamos expedir los autos de *certiorari* solicitados, revocar las Decisiones y, así, ordenar la desestimación con perjuicio de la Demanda.

El 5 de mayo, el Realtor presentó su alegato. Subrayó que, hasta febrero de 2020, rindió servicios al Dueño y, en general, reprodujo lo planteado ante el TPI en oposición a las mociones de desestimación. Subrayó que, "por la naturaleza y complejidad del proyecto, la llamada culminación del contrato … no necesariamente se podía establecer en términos de tiempo, sino de logros que se pudieran obtener en el proceso de promoción, certificación de

clientes y cierre de contratos de compraventa de propiedades."

Resolvemos[1].

## II.

La desestimación es un pronunciamiento judicial que resuelve

el pleito de forma desfavorable para el promovente, sin celebrar un

juicio en su fondo o en los méritos. S.*L.G. Sierra v. Rodríguez*, 163

DPR 738, 745 (2005); R. Hernández Colón, *Práctica Jurídica de*

*Puerto Rico Derecho Procesal Civil*, Quinta Edición, San Juan, Michie

de Puerto Rico, 2010, pág. 369.

La Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V,

R. 10.2, establece varios supuestos en los cuales una parte

demandada puede solicitar la desestimación de una acción en su

contra antes de presentar la contestación a la demanda. *Aut. Tierras*

*v. Moren & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008); véase,

además, *S.L.G. Sierra v. Rodríguez*, 163 DPR 738, 745 (2005). En lo

pertinente a la acción de referencia, la Regla 10.2(5) de

Procedimiento Civil, 32 LPRA Ap. V, R. 10.2 (5), dispone lo siguiente:

> Toda defensa de hechos o de derecho contra una reclamación en cualquier alegación… se expondrá en la alegación respondiente que se haga a las mismas, en caso de que se requiera dicha alegación respondiente, excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante moción debidamente fundamentada:
> …
> (5) dejar de exponer una reclamación que justifique la concesión de un remedio.

A los fines de disponer de una moción de desestimación, el

tribunal está obligado a dar por ciertas y buenas las alegaciones

---

[1] El Realtor solicitó la desestimación del recurso presentado por los Asociados porque la totalidad del mismo se notificó luego de expirado el término aplicable. Hemos determinado denegar esta solicitud. Subrayamos que, el mismo día en que se presentó el recurso, el hecho de su presentación, junto a su carátula, fue notificado al Realtor. Aunque no haber notificado la totalidad del recurso dentro del término aplicable es un defecto de notificación, no estamos ante una ausencia de notificación dentro de dicho término. Véase, por ejemplo, 4 LPRA sec. 24w (requiriendo "reducir al mínimo" los recursos desestimados por "**defectos** de forma o **de notificación**") (énfasis suplido). En efecto, el mandato estatutario es proveer una "oportunidad razonable para la corrección de defectos de forma o de notificación que no afecten los derechos de las partes". 4 LPRA sec. 24w (énfasis suplido). El referido defecto fue prontamente corregido por los Asociados y los derechos del Realtor no se afectaron.

fácticas de la demanda. *Torres Torres v. Torres Serrano*, 179 DPR 481, 501 (2010); *Perfect Cleaning Service, Inc. v. Centro Cardiovascular*, 172 DPR 139, 149 (2007); *Colón Muñoz v. Lotería de Puerto Rico*, 167 DPR 625, 649 (2006); *García v. E.L.A.*, 163 DPR 800, 814 (2005); *Harguindey Ferrer v. Universidad Interamericana*, 148 DPR 13, 30 (1999); *Ramos v. Marrero*, 116 DPR 357, 369 (1985). Esto obedece a que el demandante no viene obligado a realizar alegaciones minuciosas y técnicamente perfectas, sino que se le permite limitarse a bosquejar a grandes rasgos su reclamación, mediante una exposición sucinta y sencilla de los hechos. *Torres Torres*, 179 DPR a la pág. 501; *Sánchez v. Aut. de los Puertos*, 153 DPR 559, 569 (2001); *Dorante v. Wrangler de P.R.*, 145 DPR 408, 413 (1998).

Procederá una moción de desestimación al amparo de la precitada Regla 10.2(5) si el TPI determina que, a la luz de la situación más favorable al demandante y resolviendo toda duda a su favor, la demanda es insuficiente para constituir una reclamación válida. *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013); *Consejo Titulares v. Gómez Estremera, et al.*, 184 DPR 407, 423 (2012); *Colón v. San Patricio Corp.*, 81 DPR 242, 266 (1959).

En otras palabras, el promovente de la moción de desestimación tiene que demostrar que, presumiendo que lo allí expuesto es cierto, la demanda no expone una reclamación que justifique la concesión de un remedio. *Rosario v. Toyota*, 166 DPR 1, 7 (2005); *Pressure Vessels v. Empire Gas*, 137 DPR 497, 505 (1994). Además, ante una moción de desestimación, hay que interpretar las alegaciones de la demanda conjunta, liberalmente y de la manera más favorable posible para la parte demandante. *Rosario*, 166 DPR a la pág. 8; *Dorante*, 145 DPR a la pág. 414. Así pues, la demanda no se desestimará a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno

bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación. *Rosario*, 166 DPR a la pág. 8; *Pressure Vessels*, 137 DPR a la pág. 505.

### III.

"La prescripción extintiva es una institución de derecho sustantivo que extingue el derecho a ejercer determinada causa de acción". *Maldonado Rivera v. Suarez y otros*, 195 DPR 182, 192 (2016). En otras palabras, la prescripción extintiva es materia de naturaleza sustantiva, regida por nuestro Código civil. *SLG García–Villega v. ELA et al*, 190 DPR 799, 812 (2014); *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 373 (2012); 31 LPRA ant. sec. 5291.

La prescripción extintiva "tiene como propósito castigar la inercia y estimular el ejercicio rápido de las acciones, puesto que no se debe exponer a las personas toda la vida, o por un largo tiempo, a ser demandadas". *SLG Haedo-López v. SLG Roldán-Rodríguez*, 203 DPR 324, 336-337 (2019) (Citas omitidas). Véase, además, *COSSEC et al. v. González López et al.*, 179 DPR 793, 806 (2010). "Al respecto, transcurrido el periodo de tiempo establecido por ley sin reclamo alguno por parte del titular del derecho, se origina una presunción legal de abandono". *Fraguada Bonilla*, 186 DPR a la pág. 374.

El término prescriptivo para presentar una reclamación, al amparo del Artículo 1802 del Código Civil de 1930,[2] 31 LPRA ant. Sec. 5141, es de un año desde que el agraviado supo, o debió saber con razonable diligencia, del daño. Artículo 1868 del Código civil, 31 LPRA ant. sec. 5298; *SLG Serrano-Báez v. Foot Locker*, 182 DPR 824, 832 (2011).

Así mismo, el término prescriptivo, cuando no exista disposición especial que indique alguna otra cosa, comenzará a

---

[2] Hacemos referencia al Código Civil vigente al momento de los hechos.

transcurrir desde el día en que pudo ejercitarse la misma. Art. 1869 del Código Civil, 31 LPRA ant. sec. 5299. Para que comience a transcurrir el término, es necesario que la persona perjudicada conozca del daño sufrido, quién se lo ha causado y los elementos necesarios para poder ejercitar efectivamente su causa de acción. *Fraguada Bonilla*, 186 DPR a la pág. 374 (Citas omitidas).

Ahora bien, "si el desconocimiento [de los elementos de la causa de acción] se debe a falta de diligencia, entonces no son aplicables estas consideraciones sobre la prescripción". Íd.; *COSSEC et al.*, 179 DPR a la pág. 806. A estos efectos, se le exige a la parte afectada la diligencia de una persona prudente y razonable, de manera que descubra los elementos necesarios para su causa de acción en un tiempo razonable para, así, cumplir con los propósitos de la prescripción. Véase, *Vera v. Dr. Bravo*, 161 DPR 308, 330 (2004). Comenzado a transcurrir el término, el Artículo 1873 del Código Civil establece que "[l]a prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor". 31 LPRA ant. sec. 5303.

IV.

Los contratos de corretaje de bienes raíces deben tener fecha de vencimiento o un término de duración. Así lo requiere el Art. 31 de la Ley 10-1994, *supra*. Véase, además, *SLG Rodríguez Rivera v. Bahía Park*, 180 DPR 340, 356-358 (2010). Contrario a lo razonado por el TPI, en este caso, el Contrato no tenía fecha de vencimiento determinada según requerida por ley.

No obstante, no tenemos que resolver si el Contrato es nulo por esa razón. Es suficiente advertir que, cuando menos, la ausencia de una fecha de terminación, según requerido por ley, facultaba al Dueño a dar por terminado el Contrato al 14 de febrero de 2020, fecha en que el Realtor admite supo de la terminación del

mismo.   Es decir, el hecho de que el Contrato, contrario a lo requerido por ley, no contara con una fecha determinada de terminación conlleva que el Dueño podía válidamente terminar el Contrato en cualquier momento.

Una vez terminado el Contrato en febrero de 2020, el Dueño podía válidamente, como lo hizo, vender el Proyecto a cualquier persona interesada, sin la intervención del Realtor y sin que ello diese lugar a obligación contractual alguna hacia este.   Más aún, en este caso no se alega que la venta del remanente del Proyecto, ocurrida en el 2023 (tres años luego de que el Realtor supiese que el Contrato se daba por terminado), fuese producto, siquiera en parte, de alguna gestión del Realtor.   De hecho, del récord surge que, luego de febrero de 2020, el Realtor no hizo gestión de venta alguna en conexión con ninguna de las unidades del Proyecto.

En cuanto a los Asociados, dado que el Realtor culminó su trabajo en conexión con el Proyecto en febrero de 2020, los actos u omisiones de los Asociados, a los que hace referencia la Demanda, necesariamente habrían ocurrido antes de dicha fecha.   De hecho, en la Demanda se alega que, "durante el periodo del 21 de mayo de 2015 **hasta finales de 2020**, todos los demandados intervinieron negligentemente, obstaculizando gestiones realizadas por la parte demandante en cumplimiento de su obligación con Verde Real…".[3] (Énfasis provisto).   No obstante, no es hasta el 2024 que se presenta la Demanda.

Es decir, ante el conocimiento del Realtor de la terminación del Contrato en el 2020, y la ausencia de conexión del Realtor con el Proyecto luego de dicha fecha, el Realtor claramente estaba en posición, desde el 2020, de conocer los supuestos actos y omisiones de los Asociados.   Contrario a lo que el Realtor plantea, no tiene

---

[3] Véase, Demanda, Apéndice B del recurso de *certiorari* KLCE202500442, pág. 9

pertinencia el que fuese en el 2023 que el Dueño vendiese el Proyecto, pues dicho hecho, por sí solo, no reveló información específica alguna sobre los actos u omisiones de los Asociados, ocurridos antes del 2020, que supuestamente contribuyeron a la venta del Proyecto o interfirieron con el debido desempeño del Realtor de sus obligaciones bajo el Contrato.  Tampoco surge del récord, ni el Realtor alega, que se hubiese interrumpido extrajudicialmente dicho termino prescriptivo de manera oportuna. Por tanto, la reclamación de daños contra los Asociados está prescrita.

En fin, aún si tomáramos como ciertos los hechos alegados en la Demanda, concluimos que no existe una causa de acción viable a favor del Realtor en contra de ninguna de las partes demandadas. Así pues, procede la desestimación con perjuicio de la Demanda.

V.

Por los fundamentos que anteceden, se expide el auto de *certiorari* solicitado y se revocan las *Resoluciones* recurridas. Cónsono con lo anterior, se ordena la desestimación, con perjuicio, de la acción de referencia.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>Secretaria del Tribunal de Apelaciones